ROBERT W. WRIGHT *vs.* THOMAS LAWTON.

It seems to be the prevailing rule in this country, that where a party holden for the debt of another gives a promissory note for the debt which the creditor accepts in payment, it is a payment of money to the use of the principal debtor and the amount may be recovered as money paid.

But where the plaintiff made two promissory notes for the accommodation of the defendant, both payable to a third party to whom the defendant was to deliver them, the defendant agreeing to save the plaintiff harmless thereon, and the holder afterwards negotiated the notes to $A$, who obtained judgment against the plaintiff on one of the notes, after which the plaintiff gave $A$ a new note for the amount of the judgment and of the remaining note, $A$ discharging the judgment and surrendering the note, the new note being endorsed by a third party who was wholly irresponsible, the plaintiff also being irresponsible, and the defendant having no knowledge of the transaction; it was held that the plaintiff could not recover of the defendant, in an action for money paid, the amount for which he had given his note.

The new note given by the plaintiff was regarded as substantially only a renewal of his original notes and not a payment of them.

GENERAL ASSUMPSIT, for money paid; brought to the Superior Court in New Haven County. The following facts were found by an auditor to whom the case was referred:

In January, 1859, the plaintiff and one William Faulkner became associated as proprietors and publishers of a daily newspaper, called the "Daily Morning News," under the name of Faulkner & Wright, each of the copartners being the owner of an undivided half part of the newspaper and office, including the newspaper press, engine, machinery, type, furniture, and fixtures employed in the conduct of the business.

On the 3d day of September, 1859, Faulkner sold and conveyed to Lawton, the defendant, all his interest in the newspaper and business, and thereupon a new copartnership was formed, under the name of Lawton & Wright.

In part payment for the interest so purchased by him, Lawton gave to Faulkner the notes of Wright, the plaintiff, one for $300 and one for $500, payable to the order of Faulkner, which notes, so far as Wright was concerned, were accommodation notes, Lawton agreeing to save him harmless from all liability as maker of the same.    One reason for making payment in this way was that, Wright being in poor credit, Faulkner would be unable to negotiate the notes, and would be compelled to hold them until maturity, when, in the event of a failure of consideration, and of a suit being brought by Faulkner, Lawton would be able to make defence in the suit and resist the payment of the notes.    As a matter of fact some of the representations made by Faulkner to Lawton, as to the condition of the office at the time of purchase by him, were not true.

Subsequently, however, the notes were, for valuable consideration, turned out by Faulkner to James Conner & Sons of New York, who, after maturity of the $300 note, brought suit upon the same against Wright, and in 1860 recovered judgment against him, for the amount of the same with interest, but without the knowledge of Lawton.

In 1862, the judgment being unsatisfied, and the remaining note of $500 having matured and being unpaid, Conner & Sons, in consideration that Wright would give them an endorsed note for the whole amount of the judgment and the unpaid note, released and discharged Wright from further liability upon the judgment, and also gave up to him the $500 note ; and Wright thereupon, on the 15th day of December, 1862, executed and delivered to Conner & Sons, his note for the sum of $981.20, payable to the order of, and endorsed by, one Charles H. Martin, at three months from date.    Both the maker and endorser of the note were irresponsible parties.    This was also done without the knowledge of Lawton.

At the same time with the execution and delivery of this

note, Wright also executed to Conner & Sons an assignment of all his claims of every kind against Lawton. No notice of the assignment was given by Conner & Sons to Lawton until on or about the 1st day of October, 1867, nor had Lawton any knowledge of the same.

The original notes of $300 and $500 have been no otherwise paid by Wright than by the giving of the note of $981.20, and the making of the assignment to Conner & Sons of his claim on Lawton.

The court accepted the report of the auditor and reserved the case on the facts found for the advice of this court.

*Lounsbury*, for the plaintiff.

1.  The payment by Wright to Conner & Sons was not a mere voluntary payment. They were *bonâ fide* holders, for valuable consideration, without notice of any infirmity. No request from Lawton was necessary to fix his liability. The notes were originally given at his request, were accommodation notes, and he agreed to indemnify the maker. Wright, therefore, in paying the note and judgment, did only what the law would have compelled him to do. Action of assumpsit for money paid lies to recover money paid on an accommodation note. 1 Swift Dig., 412.

2.  The payment by giving a new note was, in law, a valid payment, for which an action will lie for *money paid.* The new note was given and accepted as payment. This is shown by the finding, as well as by the assignment to Conner & Sons. A bill of exchange, or negotiable note, given and received *in satisfaction* of the debt, will support a count for *money paid.  Barclay* v. *Gooch,* 2 Esp., 571 ; *Pearson* v. *Parker,* 3 N. Hamp., 366 ; *Cumming* v. *Hackley,* 8 Johns., 203 ; *Lapham* v. *Barnes,* 2 Verm., 213 ; *Douglass* v. *Moody,* 9 Mass., 553 ; *Peters* v. *Barnhill,* 3 Hill, (So. Car.,) 234, 236, note ; *Whetherby* v. *Mann,* 11 Johns., 518 ; *Arnold* v. *Camp,* 12 id., 409 ; *Ingalls* v. *Dennett,* 6 Greenl., 79 ; *McLellan* v. *Crofton,* id., 333 ; *Clark* v. *Foxcroft,* 7 id., 355. The giving of a new note is equivalent to a payment of the first, and so will support an action for money paid. *Cornwall* v. *Gould,*

4 Pick., 444. *Maples* v. *Park*, 17 Conn., 333. The same principle holds good in the action for money had and received. *Floyd* v. *Day*, 3 Mass., 405 ; *Hemmenway* v. *Bradford*, 14 Mass., 122 ; *Willie* v. *Green*, 2 N. Hamp., 333. So payment in land, which is accepted in satisfaction, will support an action for money paid. *Bonney* v. *Seeley*, 2 Wend., 481 ; *Ainslie* v. *Wilson*, 7 Cow., 662. *Randall* v. *Rich*, 11 Mass., 494, 498.

*C. R. Ingersoll*, for the defendant.

The cases cited on the part of the plaintiff are mainly to the effect that "*property* paid or received as money will support the action for money paid." *Ainslie* v. *Wilson*, 7 Cowen, 662. But it must be property—money's worth—something the value of which can be measured by money ; and just to the extent that it has a value that can be measured by money, will it support the action. "If the plaintiff had paid the defendant's debt by paying half the amount, can he recover the whole from the defendants ? I think not. He is entitled to recover the amount paid, not the amount extinguished by that payment." *Bonney* v. *Seeley*, 2 Wend., 483. See also 2 Greenl. Ev., § 113. In the cases cited, where payment by a negotiable note was held to be a money payment, there was no question of the responsibility of the parties to the note. In *Arnold* v. *Camp*, 12 Johns., 409, Ch. J. Thompson says : "There is nothing in the case showing that the maker is insolvent or unable to pay the note."

A negotiable note is a note that can be negotiated. The reason for the rule that payment by negotiable paper, when received as money, is a good payment, is " that otherwise a party may be obliged to pay a debt twice, if the paper should pass into the hands of an innocent indorsee." *Cumming* v. *Hackley*, 8 Johns., 203. But the note of an irresponsible party can have no currency. It has no value, and no one will pay value for it. The maker runs no risk of its ever passing into the hands of an innocent indorsee. It is like a check drawn upon a bank where there are no funds, or a draft that has been protested. " A forged note or dishonored draft, if delivered in payment, is no satisfaction or extinguishment

Wright *v.* Lawton.

of an antecedent demand, and for the most just and obvious reasons." *Eagle Bank* v. *Smith*, 5 Conn., 74. The note in question, though made in 1862, has never in fact been negotiated or had anything paid upon it. If it has ever had or is likely to have any value to give it negotiability, the plaintiff must show it. It is for him to prove that money's worth was paid by him, before he can recover money from the defendant.

The cases cited by the plaintiff also show that to support this action by the payment of negotiable paper, however valuable, either the note must have been paid by the plaintiff, or the party taking it must have given for it something of value, as the release of some other party who was holden to him. In *Douglass* v. *Moody*, 9 Mass., 553, the defendant was held not liable until payment of the note. In *McLellan* v. *Crofton*, 6 Greenl., 333, a recovery was had on the distinctive ground that the debt of a third person had been discharged by the note. And all the other cases cited, in which no actual payment had been made upon the note, were cases of that character.

In the case at bar Conner & Sons gave up nothing when they took the note in question. They never had any claim on the defendant, or on any one else than the plaintiff. They never, legally or equitably, were entitled to anything more than what was turned out to them by Faulkner, the individual note of Wright. In surrendering that note and taking the new one they lost nothing. And on Wright's part it was the mere substitution of one promise for another.

FOSTER, J. The plaintiff seeks to recover of the defendant the sum of $981$\frac{20}{100}$ with interest from the 15th of December, 1862, for money paid by the plaintiff on that day to Messrs. James Conner & Sons for the use and benefit of the defendant.

It is not claimed by the plaintiff that he made this payment in money, but that he gave his endorsed note for the amount; that the note was given and received in full payment and discharge of a debt which the defendant was legally bound to pay; and that it was therefore to be regarded as a money payment, and conferred the same right of action and recovery.

It has frequently been decided, both in England and in this country, that where a party gives a promissory note for the debt of another which the creditor accepts in payment, it is as a payment of money to the party's use, and may be recovered as such. Among the early cases, perhaps the earliest, in which this doctrine was distinctly laid down, is the case of *Barclay* v. *Gooch*, 2 Esp. Rep., 571. The correctness of this decision, which was made in 1797, was questioned, but the case was not overruled, a few years after in *Taylor* v. *Higgins*, 3 East, 169. In that case the plaintiff and defendant were jointly holden on a bond to a third person, a creditor of the defendant, to pay a debt of the defendant. The plaintiff gave his bond and warrant of attorney, which was accepted as payment and satisfaction of the old debt, and the old bond and warrant of attorney were cancelled. Without paying this last named bond, the plaintiff brought an action against the defendant, and the question was, whether the plaintiff was entitled to hold the defendant to bail for £120, the amount of the bond, upon an affidavit, stating the cause of action to be for so much money paid, laid out, and expended by the plaintiff for the defendant's use.

Lord Ellenborough said :—" There is no pretence for considering the giving of this new security as so much money paid for the defendant's use. Supposing even the case of the note of hand or bill of exchange [referring to *Barclay* v. *Gooch*,] to have been rightly decided, still, this security, consisting of a bond and warrant of attorney, is not the same as that, and is nothing like money." The current of American authorities sustains, we think, substantially the doctrine of the case of *Barclay* v. *Gooch*. The plaintiff's counsel refer us to numerous cases decided in the states of Maine, New Hampshire, Vermont, Massachusetts, and New York, in which the principle of that case is recognized and approved. We are not disposed to examine these cases particularly, or to express any opinion of their merits, as we decide the case at bar upon certain facts detailed in the auditor's report which make it unnecessary.

The debt of the defendant which the plaintiff claims to

have paid, and for the payment of which he seeks to recover in this action, arose out of the purchase of an interest in a certain newspaper establishment called the " Daily Morning News." Prior to, and at the time of this purchase, this establishment was owned by the plaintiff and William Faulkner, who were associated in business under the firm of Faulkner & Wright. The defendant bought out Faulkner's interest, and in part payment therefor gave him two promissory notes on time, made by the plaintiff, one for three, the other for five hundred dollars. These notes were payable to the order of Faulkner, and as between the plaintiff and defendant were merely accommodation notes, the defendant agreeing to save the plaintiff from all liability as maker of the same. This was on or about the 3d of September, 1859.

Here was a payment of the defendant's debt by a negotiable note of the plaintiff, and if the case stopped here we do not see why it would not fall within the principle of *Barclay* v. *Gooch*, and divers subsequent cases, on the authority of which the plaintiff would be entitled to recover. But the report sets forth additional, and, as we think, controlling facts, which lead to a different result.

At the time that the plaintiff gave Faulkner these notes in payment of the defendant's debt, the plaintiff was in poor credit, so poor that it was supposed Faulkner would not be able to negotiate the notes, but would be compelled to hold them till maturity, when, in the event of a failure of consideration and of a suit brought by Faulkner on the notes, the defendant would be able to make defence and resist the payment of the same. It is further found that some of the representations made by Faulkner to the defendant, as to the condition of the office at the time of the purchase, were not true.

It appears however that Faulkner did negotiate the notes, and as it seems, though the fact is not distinctly found, before their maturity, turning them out for a valuable consideration to Messrs. James Conner & Sons, who after the maturity of the three hundred dollar note brought a suit upon it against the plaintiff, and recovered a judgment against him for the

amount of the same with interest in the Superior Court for the county of New Haven at the May term, 1860. This was without the knowledge of the defendant.

On the 16th of December, 1862, this judgment being unsatisfied, and the remaining note of five hundred dollars having matured and being unpaid, the whole matter was arranged between the plaintiff and Conner & Sons, by a note at three months made by the plaintiff for $981$\frac{20}{100}$, payable to the order of one Charles H. Martin, and by him endorsed, in consideration of which Messrs. Conner & Sons released and discharged the plaintiff from the judgment and gave up to him the five hundred dollar note. This was also done without the knowledge of the defendant; and it is further found that both the maker and indorser of the last named note were irresponsible persons. Now the question is, does the giving of this note enable the plaintiff to recover of the defendant as for so much money paid for his use?

We are decidedly of opinion that it does not. A note with irresponsible names is no better than a note with fictitious names, or no names at all,—mere blank paper—worthless. Without doing violence to well settled principles of law, we cannot regard such paper as money in the payment of a debt. When a promissory note has been given and received in payment and discharge of a debt, and where courts of law have recognized giving such a note as the payment of so much money, it has been on the ground that the note was of value —equivalent to money. That cannot be said of this note. But it is said that it paid a debt, discharged a liability of the defendant. A worthless piece of paper is no legal consideration for the discharge of a debt, and if this debt was discharged it must be considered a voluntary discharge; the creditor forgave his debtor from the payment of his debt.

But the debt for which this note was given was not in form the debt nor the liability of the defendant, and there was therefore no debt of the defendant which could in any proper sense be discharged by the acceptance of the new note and the discharge of the old note and the judgment. The defendant's name did not appear upon the paper, nor was he a party to

the judgment. The original notes, the three and five hundred dollar notes, were made by the plaintiff alone and he only was liable on them. They were given as part consideration for the purchase of Faulkner's interest in the newspaper establishment, but nobody connected with the transaction regarded them as money; they were not passed or treated as such. The credit of the maker was so poor that it was supposed Faulkner would be unable to pass them, but would be compelled to hold them till maturity; and then, in the event of a suit brought on them, should there be a failure of consideration, the defendant could avail himself of it as a defence. A suspicion seems to have been entertained from the beginning that the value of the interest purchased was not so great as was represented, and hence payment was made in this peculiar kind of paper. The report states that some of the representations made by Faulkner to the defendant as to the condition of the office at the time of the purchase were not true. Such representations of course could not affect an innocent indorsee who took the notes for a valuable consideration before maturity; still they enable us to understand better the original transaction, and show that giving these notes was not considered at the time as a money payment. Manifestly no action for money paid could have been maintained by the plaintiff against the defendant when the notes were given, the agreement being that the defendant was to save the plaintiff harmless from all liability as maker of the same. But it was then, if ever, that the plaintiff paid the debt of the defendant, for he has done nothing since but voluntarily, without the knowledge of the defendant, to substitute a new promise for the old one. The personal liability of the plaintiff is substantially the same now that it was originally. He has paid nothing, and the new promise, being of no value in the market, cannot be considered equivalent to the payment of money.

It must be understood that we do not hold that the plaintiff, when he shall actually pay the amount of his note to Conner & Sons, can not recover of the defendant the amount paid. The original debt was equitably that of the defendant

to pay, and it remains equitably his debt. Whenever therefore the plaintiff is compelled to pay it he will at once have a right of action against the defendant for the amount paid. What we now hold is merely that he has not yet paid the debt, his own worthless note not constituting payment. That note, as we have remarked, is only a substitute for the original notes. It is at best merely a renewal of those notes, with some unimportant changes of form; and the plaintiff stands no better on the new note than he did on the old ones. He must in some form pay the original notes before he can have any claim on the defendant for money paid.

In this view of the case, it becomes unnecessary to consider the other questions raised. The Superior Court is advised to render judgment for the defendant.

In this opinion the other judges concurred.